This is number 23-14186, Finn v. Cobb County School District. This is number 23-14186, Finn v. Cobb County School District. Mr. Saverin, you've saved five minutes for rebuttal, correct? Correct. You may begin when you're ready. All right. Good morning. I'm Phillip Saverin for Cobb County School District. The question presented in this appeal is whether the district court abused its discretion when it enjoyed the school district map that had been duly elected by the legislature of the State of Georgia. No, the threshold question is whether you have any standing to be here as a non-party. We have a MECA file all the time in the district court, in our court, the Supreme Court. If you all can elect to be parties, why should anybody want to be a party in the traditional sense? We believe appellate standing is proper under the Kimberley Regenesis case, which says that a non-party can file an appeal if the non-party actually participated in the proceedings and the non-parties have a personal stake in the outcome. And equitable consideration supports them doing it. And you asked to be let out of the lawsuit. We did not ask to be. You moved for judgment on the pleadings. Put judgment in my favor is as clear a request to get out of a lawsuit as anything I've seen. The judgment that we asked for was that the case be dismissed against both defendants in the case. No. Which included the Board of Elections. That was your second. In your motion to intervene or in the motion for judgment on the pleadings, you talked about how you entered the case, and I can quote you the sentence if I'm sure you're familiar with it. You said, we got in here because of scurrilous accusations made against us, and they're all false. We hadn't done any gerrymandering. It's terrible. Give us judgment on the pleadings. And you had an alternative reason of the merits of the complaint, the lack of merits of the complaint from your perspective. And the district court gave you your first theory and gave you what you were asking for. And you didn't move to reintervene at that time or at several other times throughout the proceeding until very late in it. And I don't understand that. You come in, then you get out, then you don't move to get back in, even after it became evident that the other defendants, the election board, was not going to defend the lawsuit. You still didn't ask to reintervene in a prompt fashion then. We did not understand that the district court to have terminated the intervention until the district court so indicated, which was in September. The ruling on the motion was back in either June or July. The point I wanted to make is that we did immediately move to reconsider. We did move to intervene shortly after that. That motion is still pending. We did file a mandamus in this court trying to get back into the case. We did also, as a last resort, move to appear as amicus. While that appeal was pending that we had taken, we asked the court to stay the proceedings. The court denied the motion to stay, but in the same breath said that it noted, the court How can you think you are still in the case if they grant you judgment on the pleadings? I am not in the case. As we stand here today, I am not a party in the case. We are not contending that we have jurisdiction as a party to appeal, but we are claiming that equitable grounds and the equities, if I can get to the equities, because the plaintiffs do agree that we actively participate in the proceedings and that we have a personal stake in the outcome. The equities are that this map directly affects not only the members of the school board, but also the hundreds of thousands of citizens of Cobb County where a preliminary injunction was entered based on unopposed ... So move to intervene. We have moved to intervene. Afterwards. We moved to intervene later. We moved to reconsider, and in that motion to reconsider, we asked that it be considered. If the court didn't choose to reconsider, we asked to be let back in, and that was denied. Let me ask you this. If we allowed you to proceed as a friend to the court, file a notice of appeal as a friend to the court, and you lose on the merits, are you liable for attorney's fees? I have not contemplated that question. Oh, come on. Counsel. I have not contemplated that question. Well, contemplate it. If we lose ... 1988 says the prevailing party may in the discretion of the court, parentheses, all the time if it's a civil rights case, end of parentheses, be awarded attorney's fees. They'd be the prevailing party. They would be the prevailing party. They are the prevailing party now. Yeah.  They were purchased out with the promise of no attorney's fees. And therefore, there was no one to defend the map that had been enacted. That's right. But if somebody's going to defend that map, the purpose and operation of 1988 is whoever defends it and loses, at least to a civil rights plaintiff the way it's been interpreted  And it seems to me like you've got to work around to try to avoid attorney's fees. We're not liable for attorney's fees. We're not even a party. My goodness, where did you get that idea? Judge, that is not what is driving the desire to appeal the ... That may be a consequence of it. And if we allow that, everybody's going to want to be a friend of the court and not a party. But not every amicus participates actively in the case and has a personal, personal stake in the outcome. Personal stake just means that you could intervene as of right, in effect. That's a large part of intervention as of right. Are you drawing any distinction between your participation below as amicus and your participation at the time after you had intervened? Well, I think when we were allowed to intervene as an amicus, the court allowed that under a ruling that said that amicus can appear to provide useful facts and information and then completely ignored the useful facts and information that we presented and chose to issue, enter the preliminary judgment based on the claim that race was the predominant factor. But the district court is entitled to accept amicus briefs and ignore amicus briefs, correct? Absolutely. But we think that this is a different situation where there was no opposition to the motion. It is not simply a dispute between two private parties. Again, it affects the lives of hundreds of thousands of constituents in Cobb County who duly elected the board members, who duly elected the legislature, and it directly affects those people. It is not simply up to the Board of Elections to say that, well, we don't want to have the threat of attorney fees, and so therefore we are not going to do a single deposition, we are not going to do any discovery, and we are going to simply agree that race was the predominant factor. You mentioned the interest of the candidates and the voters, the residents of Cobb County, but what unique interest does the school district have in the maps? The school district is the legal arm of the school board, so it is the school board members who are duly elected that now their map has been enjoined, and we haven't even touched the fact that there has been a new map by the legislature, so this map is no longer in effect. So that could also, you know, have something to do with who is the prevailing party, but honestly, Judge Carnes, that is not something to look at, and that has no interest at all, doesn't factor in at all in terms of why we wish to appeal. And I see my time is almost out, and I have not had a chance to address the merits at all, which I think is very important for the court to consider. How is this appeal, though, not moot? All of the issues on appeal deal with the 2022 map, which has been repealed and superseded. The reason it's not moot, I would cite the case of North Carolina v. Covington, 585 U.S. 969, I'm sorry, by the Supreme Court. In that case, there had been a map that had been found to have been constitutionally infirm. A new map was enacted, and the court said that the court could look at to see whether or not the new map remedied the defects in the previous map. But isn't that more, doesn't Covington address whether the case is moot? Like there might be something left for the district court to do, but on appeal, the only issues that we're confronted with deal with the 2022 map. Here's why I think there's a lot of controversy, Your Honor, and we've given this a lot of thought. I think it's a lot of controversy because if the injunction was improper, so it would be reversed or vacated, then there would be no predicate for the district court to even consider whether or not the new map remedied any problems because there would be no finding of constitutional infirmity in the old map. As opposed to if the court finds were to affirm, then it might be an open question whether or not the district court could still entertain objections to the legislature's new map. But when the legislature passed the 2024 map, there was no injunction in place, correct? It had been stayed.  Yes. Does that affect the analysis? Well, it had not been reversed. I think enforcement of it. But why would we treat the 2024 map as remedial? I think there would be something to consider on remand whether or not the 2024 map is subject to the court's jurisdiction. I mean, we had thought about moving to dismiss the whole case for lack of case or controversy, but the way that I read the Covington case, it's a lot of controversy for that reason. But I may be mistaken. I'm not saying. That's something down the road. I would like to, maybe I can use my time on rebuttal if I could. I'll give you a couple more minutes to address the merits. Okay. So if we get to the merits, we think that the district court abused discretion for three reasons. First of all, because the legislature, it's an equal protection claim. You need to look at race being the predominant factor in passing the map. The map was passed by the legislature. The district court looked at the subjective motivations of not even the board members so much as the map drawer who recommended the map to the state legislature. And the Brinovich case, B-R-N-O-V-I-C-H, clearly says that the cat's paw theory does not apply to legislatures. The cases that the plaintiffs cited are all distinguishable, and I'll rely on my brief for that. The only independent action by the state they referred to as political infighting between Republicans and Democrats in terms of how the bill was presented without conferring with the Cobb delegation and that the committee chairperson silenced the opposition because there was destructive behavior. None of that is racial. So without any racial motivations evidenced by the state, cannot be the predominant factor. When we turn to the finding of the court that race was the predominant factor, the court found that because it was unopposed and then went about picking evidence here and there to support that as opposed to looking at the evidence as a whole and the record as a whole, putting aside what the amicus put in with just the testimony of Mr. Tyson, the declaration.  The district court ignored that the district three, which was at the heart of it, was already a majority black district, that Mr. Tyson did not create one, and not breaking up a majority minority district is something that the district court did not even look at. Let me ask you a question about Brnovich. So Brnovich is dealing with, as you aptly noted, the fact that the cat's paw theory has no application to legislative bodies. And the theory was that, you know, legislators who vote to adopt a bill are not agents of the bill's sponsors or proponents. But here we have a different factual situation. What, for example, if the General Assembly just delegates the drawing of the map to the school district and then passes what the school district wants? Aren't you their agents, in a sense? Isn't this distinguishable from Brnovich? That would be distinguishable factually, but we think it would be the same because each of the members of the legislature has the duties they owe to their constituents. It's not as though you have a private organization that speaks with one voice. I will agree that we don't have a case in this situation, but we don't have a case the other way either. And, you know, if you look at the Cooper case, which is the closest one to those facts, there the legislature was told to draw two majority black districts. And so, therefore, it was something that they looked for in terms of the legislature's motivation. But I don't think we have that here, at least on the facts that are presented. But I think the more important thing is that the district court did not look, closed with blinders, did not look at any of the explanations, did not hold a hearing under the Four Seasons case that we cited. This is, I would analogize it to where there is a summary judgment motion that is not opposed. The court still has to go and look at the evidence to make sure that it supports the relief that's being sought. All the more so where it involves directly the public interest. Ignored all the reasons that Mr. Tyson gave for why he rotated the map clockwise for partisanship reasons. And I can say wholly ignored the evidence that race was not the motivating factor. So we would say that what the court did is adopted the race thing and adopted the finding that race was the predominant factor because it was unopposed. And then went about cherry picking some testimony here and there and then looking at the impact, which is not going to look at an equal protection claim. Going back to the Brernovich case and the cat's paw, they chose to bring this as an equal protection claim, which requires that subjective finding, not as a voting rights act, which would look at impact. And we would say it was for purpose for political gain is why we would say that. Thank you, Mr. Saverin. I will give you your full time back for rebuttal. Thank you. I appreciate that. Thank you. I'd like to just make a couple of points in response to Mr. The school district's attempt to expand the equitable exception to provide appellate standing for an interested party who disagrees with a settlement or an amicus whose arguments are not adequately responded to in a lower court opinion would open the floodgates to the appellate court. But it's especially unnecessary here where the school district itself chose to remove itself from the litigation and then chose not to file a renewed motion for intervention, as Judge Carnes noted. Those were strategic choices by a sophisticated party, and this court need not undo that. What was the strategic purpose of not filing a motion to intervene after they got the judgment on the pleadings? I can't read appellants' minds, Your Honor. I don't know. You can't say those were strategic decisions if you can't read their mind. I thought you could. I suspect that plaintiffs were working very hard to obtain relief or at least the possibility of relief in time for the 2024 elections for our clients. I suspect appellants found it useful to make that schedule more difficult by filing motion after motion, by filing three different appeals, three motions per stay, a petition for mandamus, etc. So they wanted to be denied so they could appeal, so they could drag out the proceedings? Tough to say. Let me ask you this. I'm curious about motivations just as you apparently are. Do you take the position that if they were allowed to participate in this appeal and lost, that you and your clients would be entitled to attorney's fees under 1988 from them? We would have to brief that issue further.  I'm not asking for that. I'm asking do you take that position now, one way or the other? I think if they intend to claim the benefits of being a party, even though they are a non-party at this time, they should have to also accept the burdens of that position, yes, Your Honor. Okay. The second point I would make is that this appeal is not moot for the same reason that every other redistricting case does not become moot upon the passage of a remedial map. Any other outcome would make it impossible for plaintiffs to ever obtain relief in a redistricting case. That is not how redistricting litigation has ever worked, and it is not how it should work here. We would point, as Mr. Saverin did, this Court, to the Supreme Court's opinion in North Carolina v. Covington. I'm sorry. Refresh my recollection. Was Covington a permanent injunction, a final decision, or was it preliminary? I would have to confirm, Your Honor. I think the discussion in Covington speaks to how, if it were the case that a remedial map automatically mooted out the underlying litigation, then that would make it so plaintiffs would essentially never be able to obtain relief without bringing new litigation. But you understand the distinction between preliminary and permanent for that reasoning and analysis because a preliminary injunction doesn't void the original map. It finds a substantial likelihood that it's defective. Correct. But that's different from a final judgment that says this map is out. That's right, Your Honor. And I think another helpful case here is at the Northern District of Alabama, Singleton v. Merrill, which came down last year. And the District Court has an extensive opinion on this issue in that case where they explain that even with a preliminary injunction, if the passage of a remedial map following a preliminary injunction were to moot out the underlying litigation, that would put redistricting litigation into an infinity loop and essentially make it impossible. You know, the way we ordinarily avoid the infinity loop on mootness is by saying capable of repetition yet evading review. Yes. There's no mention of that that I saw in any of these decisions or in the briefs. Yes. The remedial map in this day came after our briefing was due because we were on an expedited briefing schedule. But I think we absolutely allege that the harm that the voters of Cobb County are experiencing now has continued from the past map. And that is because a remedial map has been passed. It has been untested. And that's what the upcoming election is being scheduled to run on, isn't it, the remedial 2024 map? That's correct. The 2024 map passed by the legislature. What happens if, and I'm not saying we're going to take either possibility, what happens if between now and the time of the election we issue a decision ruling in their favor and saying that they should have been allowed to intervene and the map, the original map, and the decision in voiding it need to be reconsidered? What happens to the election? Well, I think there are a number of options that this court could take up. I think if this court were to remand to the district court for a full trial on the merits for the school district to be able to participate in, the 2024 elections could take place under the map passed by the legislature in 2024. And plaintiffs would have to look for relief either in the 2026 elections or in a special election if we found that the circumstances necessitated that. Okay. The second point I would make is that even if this court disagrees and finds that the school district appeal is proper, the school district still cannot prevail here because the district court did not in any way abuse its discretion in granting the P.I. There was more than sufficient evidence in the record, even considering the school district's submissions, to conclude that a map was a racial gerrymander due to the undisputed facts that the map drawer created a majority black district and moved voters in and out of districts on the basis of race purportedly to comply with the Voting Rights Act without having any good reason for doing so. Because courts cannot approve a racial gerrymander whose necessity is supported by no evidence, this court should uphold the P.I. and remand to the district court for a remedial hearing. In response to a couple of Mr. Saverin's arguments, I would say that the school district has repeatedly suggested that the legislature is the relevant actor here rather than the map drawer. And in racial gerrymandering cases, the Supreme Court has always looked to the intent of the map drawer and those controlling the map drawer or directing the map drawer. So here, our plaintiff's focus was on Mr. Tyson and his work under both the chair of the board and the chair's proxy, Mr. Steinhauser. That is what the Supreme Court has always counseled should be the primary inquiry in a racial gerrymandering case. So the Brnovich case that they bring up and the cat's paw theory is simply not applicable here. That was an intentional discrimination case. Intentional discrimination cases are analytically distinct from racial gerrymandering cases and are subject to a different analysis as such. I would also say that not considering an amicus, all of an amicus' arguments in a district court opinion is simply not an abuse of discretion and to suggest otherwise would open this court up to significant line drawing problems. Mr. Saverin also mentioned that no hearing was held. I would say that no credibility determination was needed on the evidence presented to the district court. In particular, the district court relied on the expert report provided by Mr. Tony Fairfax and the deposition testimony of Mr. Tyson himself where he admitted that he drew District 3 in order to comply with the VRA but that he did not perform the requisite VRA analysis. Those two things are unrefuted by the school district and a map drawer's own concession and statistical data that is evident from the face of the map are not the kind of evidence that require credibility determinations. Finally, I would say that the school district's repeated post hoc justification that partisanship was in fact the prevailing motivation for passage of the map is also unavailing here and there are a couple of reasons for that. The first is that the partisanship justification is completely contradicted by the factual record. Throughout the redistricting process, board members never asserted that partisanship was a primary motivation for the map drawing and even in every deposition, no board member asserted that partisanship was a primary motivation. In Mr. Tyson's deposition, he said that partisanship was an important consideration but not an overriding one and he also asserted multiple times that he was acting not as a policymaker but purely as the technical hands for the board members' own policymaking. The school district in particular relies on two individual emails to suggest that partisanship was the prevailing concern. One of those emails was from Mr. Tyson to himself and he asserted in his own deposition that he could not recall what those notes meant and the school district subsequently in briefing suggested that they understood them to be partisanship considerations and the other email was from Mr. Banks, vice chair of the board, to Mr. Tyson after the map drawing process was complete. It came from a board member who admitted he had essentially been cut out of the bulk of the map drawing process and so is also not compelling evidence here. But the point that I would make is that even if the ultimate goal was partisan gain and nobody mentioned that or discussed that at any point during the map drawing process, that does not change the overwhelming evidence that race was the predominant criterion used to further that goal. Mr. Tyson repeatedly testified that he used racial data and racial information in drawing District 3 and as Cooper counsels, where a map drawer uses race as the predominant criterion in the map drawing, perhaps thinking that a VRA district is more sellable to the public than a partisan gerrymander, that still triggers strict scrutiny. So even if partisanship was the prevailing consideration, this map still cannot survive strict scrutiny. I welcome any other questions from the court. Thank you. Thank you. We ask the court to affirm the preliminary injunction and remand to the district court for remedial hearing. All right. A few things I wanted to make clear. As far as the equities of the case, I understand that's a larger concern than I thought it would be. The school district, talking about strategy choices, the school district did not intend to be dismissed. Had I wrote the brief, had I understood that that was the effect of the court's ruling, we would have immediately asked to reintervene for purposes of continuing to participate in the case. We participate in depositions. Excuse me, counsel. How can you not contemplate that if you were awarded judgment on the pleadings, that you will be out of the case? We wanted the entire case to be dismissed. What we were saying is that there had not been a claim that had been stated. It would have been a motion to dismiss except we had already answered, and so therefore we phrased it as a motion for judgment on the pleadings. But what I'm saying is if we intended to be dismissed by it, then why would we have moved to reconsider the minute that the judge told us that that was what she intended? She even said in the hearing transcript that that was not clear, but that was what she had intended. Why would we have sought so hard to appeal? Why would we have filed a mandamus? You've answered my question why you asked for judgment on the pleadings, and I think it is more than fair reading that you asked. You wanted both defendants out. But once she gave you judgment on the pleadings, and it was apparent from that conference and thereafter that the election defendants weren't out of the case and you were, why not move to intervene immediately instead of waiting over two months? No, it didn't wait over two months. It was in September when the judge told us that they were out of the case, and that's when we moved to reconsider. And at that point in time, we were working with the election board, and I'll tell you, I mean, it's not in the record, but I can tell you that we had our experts, and we were willing to step up to the election board until they told us no, that they had reached a settlement. At that point, we said, okay, we've got to try and get, how else can we get back in? I mean, we had been kicked out, and we were trying to get back in. I take responsibility, Your Honor, for not having done so sooner, but the attorneys on our side looked at it, and we did not think that we had been, that our intervention . . . According to my chronology, and you need to tell me if this is wrong, November 2, 2023 was the district directed the clerk to enter judgment in favor of the school district, right, and to terminate it from the docket. Right. The court prohibited the school district from filing motions as a party and from participating in discovery. Right. Because you weren't a party in the court's view. Right. All right, that means you're not in the case. Correct. November 2, 2023. Your motion to intervene was, after that, was January 9, 2024, was it not? I think that's correct, Your Honor. All right, from November 2 to January 9 is not immediately. No, what I'm saying is . . . It's over two months. Okay, I was thinking a different time frame. I was thinking from when the judge granted the motion that we had filed for judgmental pleadings until September, when the judge told us that her intent was to terminate us as an intervener, at which point we moved to reconsider. And the ruling in November was on withdrawing the motion to reconsider. At that point, I believe Linda Smith is correct here. Yeah, November 8. November 8, the judge granted our motion to appear as an amicus, and at the time said that she cited the rule that amicus can be granted to contribute to the court's understanding of the matter in question by proffering timely and useful information. Judge, we were doing many things. We were trying to get back in the case. To say that we made a strategic choice to get out of the case and then try to get in the last minute is just not true. The plaintiffs . . . I mean, two points I would like to make, if I could, in the last 20 seconds that remain. One is that the gravamen of the plaintiff's claim is that Mr. Tyson, with his mapmaker, created a majority black district. That's District 3. I would ask you to look at page 6 of the preliminary injunction order, document 212, and you'll see District 3 remained. There was no creation of a majority black district. That's the fundamental problem. Everything that they're arguing, everything the court found, flowed from that clearly erroneous line. And the second thing I would like to say is that in terms of delay by us, the plaintiffs filed this lawsuit on June 9, 2022. They did not move for a preliminary injunction until October 23, 2023. All right. Now you're getting in a new territory. Let's conclude. I just wanted to say that the delay in terms of . . . It crushed the time it made so that it was very difficult to respond to the preliminary injunction when it was filed. Thank you. Our next case is . . .